UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL W.

             Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.
_____

**DECISION AND ORDER**

1:24-CV-00770 EAW

## INTRODUCTION

Represented by counsel, plaintiff Michael W. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), (Dkt. 10; Dkt. 14), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 10) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 14) is denied.

## BACKGROUND

Plaintiff filed his application for SSI on January 14, 2021.  (Dkt. 5 at 315-21).[1]  In his application, Plaintiff alleged disability beginning October 1, 2016.  (*Id.* at 315).  Plaintiff's application was initially denied on February 26, 2021.  (*Id.* at 156-61).   At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Paul Georger on December 14, 2021.  (*Id.* at 59-88).  On February 1, 2022, the ALJ issued an unfavorable decision.  (*Id.* at 119-33).  Plaintiff requested Appeals Council review, and his request was granted on December 12, 2022, remanding the matter to the ALJ.  (*Id.* at 141-42).

A second hearing before the same ALJ was held on August 15, 2023.  The ALJ issued an unfavorable decision on January 3, 2024.  (*Id.* at 22-35).  Plaintiff again requested review by the Appeals Counsel, and his request was denied on July 8, 2024, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 6-11).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of

impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.     The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 14, 2021, the application date.  (Dkt. 5 at 24).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of major depressive disorder and generalized anxiety disorder.  (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairments of alcohol dependence, astigmatism, presbyopia, myopia, obesity, hyperlipidemia, hemangioma, and nevi on the skin were non-severe.  (*Id.* at 24-25).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 25).  The ALJ particularly considered the criteria of Listings 12.04 and 12.06, and Plaintiff's obesity in reaching his conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform the full range of work at all exertional levels but with the following non-exertional limitations:

> he is able to perform simple, routine and repetitive tasks; perform simple work-related decisions; occasionally interact with supervisors, coworkers, and the general public; and able to tolerate few changes in a routine work setting defined as occasional changes to the worksite and routine.

(*Id.* at 27).

At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 33).  The ALJ further relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of laborer, laundry; warehouse worker; and hand packer.  (*Id.* at 34).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.*).

## II.  **Remand for Further Administrative Proceedings is Required**

Plaintiff asks the Court to reverse the Commissioner's decision, or in the alternative remand the matter for further administrative proceedings, on the following grounds: (1) the ALJ failed to properly evaluate the medical opinion of Kathryn Millard, APRN-BC; (2) the ALJ improperly discounted Plaintiff's living arrangements in congregate care and his difficulties in completing activities of daily living; and (3) the ALJ erred in his assessment of the findings of the SSA psychiatric consultant.  (Dkt. 10 at 14-24).  For the following reasons, remand for further administrative proceedings on the first issue is required.

### A.  **Evaluation of Opinion Evidence**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on

the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citations omitted).

It is well-settled that "an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding."  *Michelle J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00306 CJS, 2023 WL 2623587, at *4 (W.D.N.Y. Mar. 24, 2023) (defining cherry-picking as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source" (citations omitted)).  "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary."  *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022); *see also Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) ("When viewed alongside the evidence of the apparently cyclical nature of Estrella's depression, the ALJ's two cherry-picked treatment notes do not provide 'good reasons' for minimalizing Dr. Dron's opinion.").  However, "an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence."  *Lisa T. v. Kijakazi*, No. 3:20-CV-

1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022) (quotations and citations omitted).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at § 416.920c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at § 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

Plaintiff challenges the ALJ's assessment of the opinions provided by APRN Millard, arguing that the ALJ's decision failed to comply with the applicable regulations as well as the Appeals Council 2022 remand order and directive to explain in greater detail the basis for not accepting her opinions in full. Specifically, in its remand order, the Appeals Council stated:

> The hearing decision does not contain an adequate evaluation of opinion evidence in assessing [Plaintiff's] residual functional capacity (RFC). An Administrative Law Judge will articulate the persuasiveness of all the medical opinions and prior administrative medical findings in the case record, including an explanation of how the Administrative Law Judge considered the factors of supportability and consistency (20 CFR 416.920c). If the RFC assessment conflicts with an opinion from a medical source, the ALJ must

explain why the opinion was not adopted (Social Security Ruling 96-8p). The Administrative Law Judge found that [Plaintiff] has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] is limited to simple, routine, and repetitive tasks; simple work related decisions; and few changes in a routine work setting, defined as occasional changes to the worksite and routine (Finding 4). In so finding, the decision indicates that the opinions of Kathryn Millard, APRN-BC are very persuasive (Decision, page 9). Ms. Millard opined that [Plaintiff] had marked difficulties in maintaining concentration, persistence, or pace and would likely be absent from work about two days per month due to his impairments or treatment (Exhibit B18F, pages 9-10). The RFC appears inconsistent with these portions of the opinion, and the decision does not explain why corresponding limitations were not warranted. Further consideration should be given to this opinion evidence.

(Dkt. 5 at 141). Plaintiff contends that the ALJ continues to err in his assessment of APRN Millard's opinions. The Court agrees.

APRN Millard was Plaintiff's treating provider. She completed an undated Medical Examination for Employability Assessment form which reflected that Plaintiff had no limitations and was "able to work w/o restrictions." (*Id.* at 31). On November 1, 2021, APRN Millard also completed a Mental Impairment Questionnaire, which indicated that Plaintiff did not have any medication side effects, his symptoms were manageable or in remission, and his prognosis was good. She opined that he had a limited but satisfactory ability to complete a normal workweek without interruptions from his psychologically based symptoms, perform at a consistent pace without an unreasonable amount of rest periods, and deal with normal work stress. APRN Millard opined that Plaintiff has marked

limitations in maintaining concentration, persistence, or pace, and would miss approximately two days of work per month. (*Id.* at 31-32).

The ALJ concluded that these opinions from APRN Millard were mostly persuasive, explaining:

> The undersigned has considered Ms. Millard's opinions both singly and in combination with each other and finds them to be mostly persuasive because they are supported by Ms. Millard's knowledge of [Plaintiff]. They are also consistent with each other as well as with the record as a whole, including the mental status findings, [Plaintiff's] self-reported activities of daily living, and [Plaintiff's] good response to outpatient treatment (See, e.g., B13E, B2F/4; B4F/101; B8F/5, 7; B16F/9; B18F/ 14). Ms. Millard's opinions regarding marked impairment in maintaining concentration and attention and finding that [Plaintiff] would miss two or more days per month from work are not persuasive, as they are not supported by her own examination findings, explanation with citations to the medical record, nor are these limitations consistent with the mental status examination findings and [Plaintiff's] reported activities of daily living, as discussed above.

(*Id.*).

In addition, the ALJ considered a May 2023 Medical Examination for Employability Assessment form completed by APRN Millard. In that form, APRN Millard indicated that Plaintiff did not have limitations in his ability to understand and remember instructions, maintain attention/concentration, make simple decisions, interact appropriately with others, and maintain socially appropriate behavior, but that he was moderately limited in the ability

to function in a work setting at a consistent pace. APRN Millard recommended that Plaintiff should avoid employment involving alcohol distribution or consumption. (*Id.* at 32).

The ALJ found the 2023 opinion from APRN Millard partially persuasive, explaining:

> This opinion is partially persuasive, based on Ms. Millard's treating relationship with [Plaintiff]. It also supports the rationale that [Plaintiff] was stable with continued treatment for mood disorders and injections of vivitrol. However, this opinion appears to have been rendered after multiple years of treatment and may not reflect [Plaintiff's] functioning earlier in the period at issue, in which he exhibited somewhat greater restrictions, based on Ms. Millard's prior assessments. The opinion is supported by and consistent with examination findings and with [Plaintiff's] reported activities of daily living, as discussed above.

(*Id.* at 32-33).

The ALJ also considered the opinions of APRN Millard in connection with his assessment of other opinions in the record. For example, the ALJ addressed the opinions of psychiatrist Patrick Hurley, M.D., who completed a Medical Examination for Employability Assessment form on September 6, 2017. In it, Dr. Hurley opined that Plaintiff had moderate limitations with carrying out instructions, maintaining attention and concentration, and maintaining socially appropriate behavior. He also concluded that Plaintiff should avoid high paced environments, large crowds, or "anything requiring multiple steps or complex tasks/instructions." (*Id.* at 31). On October 8, 2018, Dr. Hurley opined that Plaintiff was "very limited" in unidentified areas, moderately limited with maintaining attention and concentration, and that he lacks work industry or ability to maintain a schedule. (*Id.*). On March 20, 2019, Dr. Hurley opined that Plaintiff had moderate limitations with understanding and remembering instructions and an ability to

function in a work setting at a consistent pace.  He concluded that Plaintiff was able to work part-time with limited concentration for extended periods of time.  (*Id.*).  On July 8, 2019, Dr. Hurley again opined that Plaintiff had moderate limitations with interacting appropriately with others and an ability to function in a work setting at a consistent pace. In finding Dr. Hurley's opinions unpersuasive, the ALJ stated in part that the "two opinions of Ms. Millard are far more persuasive because, as noted below, as they are within the period at issue and more consistent and well-supported with each other and the evidence as a whole."  (*Id.* at 31).

Similarly, in finding unpersuasive the opinions of state agency reviewing psychiatric consultants J. May, Ph.D., and L. Dekeon, Ph.D., that Plaintiff had no more than mild "paragraph B" areas of functioning, again the ALJ stated with respect to each opinion that "the two opinions of Ms. Millard are far more persuasive because, as noted above, they are more consistent and well-supported with each other and the evidence as a whole."  (*Id.* at 32).

Plaintiff contends that the ALJ's conclusion that APRN Millard's 2021 opinions were mostly persuasive, while at the same time finding that her conclusions that Plaintiff had marked limitations in the area of maintaining concentration, persistence, or pace, and that he would miss about two days of work per month were not persuasive, is not well-supported.  As noted, these were the same portions of the APRN Millard's opinions that the Appeals Council determined were insufficiently addressed in the ALJ's first decision.

The reasons provided by the ALJ for rejecting portions of APRN Millard's opinions in the instant decision were that her conclusions were not supported by her own examination

findings, she did not explain her opinions with citations to the medical record, and the opinions were inconsistent with the mental status examination findings. The ALJ also concluded that those particular limitations were not consistent with Plaintiff's reported activities of daily living. But what the ALJ did not sufficiently explain is why the identified reasons for discrediting these portions of APRN Millard's opinions applied only to the selected portions he was rejecting but not to those portions he accepted. In other words, the ALJ did not adequately address or explain in a manner that is clear to the Court why his reasons for discrediting APRN Millard's favorable opinions did not apply equally to her other opinions, which he identified as "far more persuasive" and "more consistent and well-supported with each other and the evidence as a whole" than any of the other opinions in the record. In addition, the ALJ did not address how the portions of her opinions that he did not credit were consistent with or supported by those of Dr. Hurley and the state agency reviewing psychiatric consultants.

While of course the ALJ is free to credit some or all of a medical source statement, he is not entitled to "cherry pick" only those portions which support his finding on disability, a circumstance which cannot be ruled out here in light of the lack of a sufficiently detailed explanation. *See McCall v. Colvin*, No. 15-CV-6383P, 2017 WL 631352, at *14 (W.D.N.Y. Feb. 16, 2017) ("The ALJ's explanation for rejecting the limitations assessed by [the consultative psychiatric examiner] relating to [Plaintiff's] ability to interact with others and to deal with stress limitations, while adopting the remainder of [the consultative psychiatric examiner's] opinion, was wholly conclusory. The ALJ reasoned that the limitations were 'not internally consistent with the other findings in the examination' and

were not 'supported by the treatment record and other opinions noted in this decision,' although he failed to identify, let alone explain, the internal inconsistencies or the inconsistencies with the record."); *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant." (citing *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015)); *Bohart v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011) ("An ALJ cannot selectively choose the only portions of a medical opinion that support his determination, while ignoring others.") (citations omitted).  Because here, it is not clear to the Court how the ALJ reached his determination with respect to APRN Millard's opinions, the Court cannot conclude that the determination is supported by substantial evidence.[2]

In addition, any error by the ALJ in assessing APRN Millard's opinions cannot be considered harmless.  At the hearing, the vocational expert testified that a requirement for two or more absences per month would preclude employment for Plaintiff in the jobs identified.  (Dkt. 5 at 56); *see also Matthew G. v. Comm'r of Soc. Sec.*, No. 21-CV-01222-MJR, 2024 WL 48301, at *5 (W.D.N.Y. Jan. 4, 2024) ("The ALJ's error was not harmless.

---

[2]      In addition, Plaintiff argues that to the extent the ALJ reads APRN Millard's 2023 opinion as demonstrating improvement in Plaintiff's limitations in light of the lack of inclusion of an opinion that Plaintiff would be absent from work two or more days per month, Plaintiff notes that the 2023 form did not contain a question asking about absences from work.  The Court agrees with Plaintiff that any inference from that omission cannot fairly be drawn.

The VE testified that employers will tolerate employees being off task ten to 15 percent of the workday, but anything over 15 percent would preclude all competitive work. . . . So, if Plaintiff's time off task was actually greater than ten or 15 percent, the VE might have come to a different conclusion at step five of the sequential evaluation, which could have resulted in Plaintiff being found disabled."); *Jacqueline R. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00097-EAW, 2023 WL 4360557, at *6 (W.D.N.Y. July 6, 2023) (finding ALJ's error not harmless where the VE testified that work would be precluded if the restriction at issue was included).

Accordingly, because an error in assessing APRN Millard's opinion was potentially outcome-determinative, it cannot be considered harmless and must be addressed by the ALJ on remand.

### B. **Plaintiff's Remaining Arguments**

As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may

change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

 SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       September 26, 2025
             Rochester, New York

- 17 -